CLERK US DISTRICT COURT
NORTHERN DIST. OF TX.
FILED
2017 AUG 15 PM 4: 27

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JANET L. HORTON, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 4:16-CV-0285-O-BL |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U. S. C. § 405(g), Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). Plaintiff disagrees with the determination that she is liable for an overpayment of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[1] *See* Compl. (doc. 1). The Commissioner has filed an answer, *see* Answer (doc. 11), and a certified copy of the transcript of the administrative proceedings, *see* SSA Admin. R. [hereinafter "R."] (doc. 14), including hearings before the Administrative Law Judge ("ALJ"). The parties have briefed the issues. *See* Pl.'s Br. (doc. 16); Def.'s Resp. Br. (doc. 19). The United States District Judge referred the case to the undersigned pursuant to 28 U.S.C. § 636. After considering the pleadings, briefs, and administrative record, the undersigned recommends that the Commissioner's decision be affirmed.

## I. BACKGROUND

Plaintiff was awarded DIB in March 1993. R. 59. She continued to work in various respects, including a nine-month trial work period that commenced in August 1997 and an extended period

---

[1]Title II governs disability insurance benefits. *See* 42 U.S.C. §§ 401-34. This recommendation will often refer to Plaintiff as Claimant, a designation used in social security cases.

of eligibility that continued for three years commencing May 1998. R. 30,[2] 62. On April 19, 2001, the Social Security Administration ("SSA") issued a notice of cessation to inform Plaintiff that, because of medical improvement, her disability ended on April 1, 2001. R. 67. Plaintiff sought reconsideration, and following a hearing on September 13, 2001, a state hearing officer upheld the decision. R. 30. Plaintiff sought and obtained a hearing before an ALJ. *Id.* She appeared for that hearing on December 17, 2002. *Id.* The next month, the ALJ issued a fully favorable decision in which he found Plaintiff to be under a continuing disability and had not engaged in substantial gainful activity. R. 30-31.

On March 30, 2006, the SSA sent Plaintiff a notice of a proposed decision to find that because of substantial work, her disability ended in July 2002 and was last entitled to benefits in October 2002. R. 31. In June 2006, Plaintiff began working full-time and notified the SSA of the job by telephone and letter. R. 602-03. On June 13, 2006, Plaintiff completed a Disability Update Report in which she informed the SSA: "I have worked for the same employer since 1998 part-time. I started full time June 1, 2006. I should be on my trial period right now 6/1/06." R. 682-83. On September 25, 2006, the SSA informed her that, although it had previously informed her that her case was under review, it did "not need to review [her] case at this time." R. 665.

On April 7, 2007, Plaintiff sent the SSA a second letter stating that she was aware that she was receiving benefit payments while working, but the payments were for trial work. R. 511, 667. She stated: "Please do not over pay me because I am not in a position to pay you back." *Id.* On July 3, 2007, SSA issued a change in benefits stated that Plaintiff had been overpaid $61,262.00 in

---

[2]Because the ALJ describes the administrative background in great detail and neither party expresses any disagreement with it, this recommendation often cites directly to the decision of the ALJ for background information.

benefits. R. 31. On July 15, 2007, Plaintiff again moved for reconsideration; asked for trial work period; and provided an SSA letter dated September 25, 2006, in which the SSA informed her that no review of her disability case was necessary at that time. *Id.* The next day, she filed a request for waiver of overpayment alleging that the overpayment was not her fault. *Id.*

More than a year later, on July 12, 2008, the SSA issued a notice of overpayment for the months of October 2002 through June 2007 in the same amount set out in July 2007. R. 608. Plaintiff appeared for a hearing before an ALJ on October 9, 2009. R. 31. By decision dated February 18, 2010, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity during 2002 and was not overpaid that year; (2) was not entitled to a trial work period in 2006 based on substantial gainful activity in 2003 through 2005; and (3) was at fault for the overpayments in 2003 through 2006 even considering her physical and mental impairments. R. 692-97. The ALJ thus found that the SSA could not waive the overpayment. R. 697.

On April 9, 2010, Plaintiff sought review of the ALJ decision by the Appeals Council ("AC"). R. 700. On January 11, 2012, the AC remanded the case to the ALJ for further proceedings. R. 743. In its decision remanding the case, the AC found that it was unclear whether the ALJ "found the claimant without fault or not without fault." R. 745. The AC further found that, although the ALJ "found that recovery of the overpayment would not defeat the purpose of Title II," an exhibit containing financial information appears to indicate the contrary. *Id.* (citing Ex. 81). The AC directed the ALJ to take the following actions on remand: (1) enter certain documents into the record; (2) make specific findings regarding period and amount of overpayment while considering the claimant's trial work period and extended period of eligibility; (3) analyze whether claimant was without fault; (4) make findings regarding defeating purposes of Title II and being against equity and

good conscience, if the ALJ finds the claimant without fault; (5) decide whether overpayment may be waived; and (6) provide a rationale for all findings and the decision. R. 745-46.

On remand, Plaintiff appeared before ALJ Rebecca D. Westfall on July 27, 2012. R. 1471-1517 (transcript of hearing). On September 20, 2013, the ALJ issued a decision finding that Plaintiff has been partially overpaid and recovery for a portion of the overpayment is not waived. R. 32. The ALJ made the following findings:

> (1) Plaintiff had a trial work period from August 1997 through April 1998.
>
> (2) Plaintiff had an extended period of eligibility beginning May 1998 and ending April 2001.
>
> (3) Plaintiff was overpaid benefits in the amount of $56,273.00 during the period of April 2003 through June 2007.
>
> (4) Plaintiff was at fault in causing the overpayment.
>
> (5) Plaintiff was not overpaid for the period of July 2002 through March 2003 and benefits for those months have been deducted from the amount of overpayment set out in Finding 3.
>
> (6) Recovery of overpayment is not waived; Plaintiff is liable for repaying the overpayment of $56,273.00; and she should be placed on a repayment plan of $100.00 per month.

R. 35-37.

The Appeals Council denied review on November 10, 2015, because it "found no reason" to review the ALJ's decision. R. 18. The ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review"). Plaintiff commenced this social security appeal on April 22, 2016. *See* Compl. She presents five issues for review. *See* Pl.'s Br. at 1.

4

## II. LEGAL STANDARD

"As with all social security cases, judicial review of the Commissioner's decision regarding an overpayment is limited to determining whether the decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied to evaluate the evidence." *Seawood v. Astrue*, No. 4:10-CV-962-A, 2011 WL 4459739, at *1 (N.D. Tex. Aug. 31, 2011) (recommendation of Mag. J.) *adopted by* 2011 WL 4459678 (N.D. Tex. Sept. 26, 2011); *accord Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton*, 209 F.3d at 452). "In applying the substantial evidence standard, the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The courts neither "try the questions *de novo*" nor substitute their "judgment for the Commissioner's, even if [they] believe the evidence weighs against the Commissioner's decision." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). The Commissioner resolves conflicts of evidence. *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015).

## III. ANALYSIS

This appeal raises the following issues: (1) whether Plaintiff has Multiple Sclerosis ("MS") and related symptoms; (2) whether her earnings were below substantial gainful activity level; (3) whether she was at fault for the overpayment; (4) her date of birth and age; and (5) her correct position description. Pl.'s Br. at 1. The Commissioner concedes that Plaintiff has MS and was found disabled as of May 29, 1992. Def.'s Resp. Br. at 2. The Commissioner also concedes her date

of birth, age, and position description. *Id.* Despite those concessions, those issues do not impact this appeal. The only material issues before the Court are (1) whether substantial evidence supports the finding that Plaintiff's earnings in 2003 exceeded the substantial gainful activity level and, if so, (2) whether the ALJ properly found Plaintiff was at fault in causing the overpayment.

A. **Earnings Exceed Substantial Gainful Activity Level**

Plaintiff argues that her earnings did not amount to substantial gainful activity because medical expenses reduced her earnings below that level. The Commissioner disagrees.

Individuals receiving disability benefits are no longer entitled to such benefits when their earnings exceed the level for substantial gainful activity. *See* 20 C.F.R. § 404.401a.[3] For 2003, an individual could earn up to $800 per month or $9,600 per year before reaching the substantial gainful activity level. *See* Program Operations Manual System (POMS), https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015 (last visited Aug. 15, 2017); *accord* R. 612 (setting out same figure). The SSA considers an individual's gross earnings, minus any subsidized earnings and the reasonable cost of any impairment related work expenses. *See Stone v. Colvin*, No. 3:11-CV-1459-BH, 2013 WL 2156035, at *2 (N.D. Tex. May 20, 2013) (relying on 20 C.F.R. § 404.1574; SSR 83-33, 1983 WL 31255). Section 404.1576 provides guidance regarding impairment-related work expenses.

The ALJ found that Plaintiff was performing substantial gainful activity as of January 2003 and was thus no longer disabled and entitled to benefits. R. 34-35. The administrative record contains a wage report showing that Plaintiff earned in excess of $13,000 from Target in 2003. *See* R. 419, 430-32, 816. Other records show the same, as well as earnings in excess of $20,000 in 2004;

---

[3]The last sentence of § 404.401a was amended effective December 18, 2006, to include introductory phrase, "[e]xcept as provided in § 404.471." Section 404.471 concerns fraudulently concealing work activity, which is not at issue in this case. Therefore, § 404.401a is materially the same pre- and post-amendment.

6

almost $19,000 in 2005; and about $32,000 in 2006. R. 529, 541, 545-46. Plaintiff testified that the amount for 2003 seemed "about right." R. 1480. She further testified that she called the SSA to inform it that she would exceed the substantial gainful activity level, but they informed her about incentives for medical expenses. R. 1496. Nothing indicates that any of her earnings were subsidized. In addition, Plaintiff only claims to have incurred $3,397.00 in impairment related work expenses for 2003. *See* R. 601. Subtracting that amount from her gross income yields an amount in excess of the substantial gainful activity level. The Court should find that substantial evidence supports the ALJ finding that Plaintiff's 2003 earnings exceeded the substantial gainful activity level and that she was thus no longer eligible for benefits as of January 2003.

That Plaintiff's 2003 federal tax return shows wage income of $12,666, *see* R. 641, does not dictate a contrary finding. Taxable wage income listed on an income tax form does not necessarily reflect an individual's gross income that is relevant to the SSA determination. *See* 20 C.F.R. § 404.1574(b).

**B. Fault for Overpayment**

Plaintiff claims she was not at fault for the overpayment. The Social Security Act provides a procedure for adjusting or recovering overpayments. 42 U.S.C. § 404(a).[4] However, it also precludes adjustments or recovery from "any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." *Id.* § 404(b). Social Security regulations likewise recognize that "the Act provides that there shall be no adjustment or recovery in any case where an overpayment under title II has been made to an indi-

---

[4]Section 404 has had four versions since 2000: (1) effective through March 1, 2004; (2) effective March 2, 2004, through December 14, 2009; (3) effective December 15, 2009, through November 1, 2015; and (4) effective November 2, 2015. No amendment materially alters the statute for purposes of this Social Security appeal.

7

vidual who is without fault if adjustment or recovery would either defeat the purpose of title II of the Act, or be against equity and good conscience." 20 C.F.R. § 404.506(a).[5]

> Fault as used in without fault (see § 404.506 and 42 CFR 405.355) applies only to the individual. Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual or any other individual from whom the Administration seeks to recover the overpayment from liability for repayment if such individual is not without fault. In determining whether an individual is at fault, the Social Security Administration will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has. What constitutes fault (except for deduction overpayments see § 404.510) on the part of the overpaid individual or on the part of any other individual from whom the Administration seeks to recover the overpayment depends upon whether the facts show that the incorrect payment to the individual or to a provider of services or other person, or an incorrect payment made under section 1814(e) of the Act, resulted from:
>
> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507.

The regulations include provisions for determining when an individual is "without fault" in both a deduction overpayment scenario (§ 404.510) and an entitlement overpayment scenario (§ 404.510a). A provision also explains when an individual is at fault in a deduction overpayment scenario. *See* 20 C.F.R. § 404.511. Consistent with § 404.506, the SSA will waive an adjustment or recovery of an overpayment when the adjustment or recovery is "deemed 'against equity and good conscience'" or is "considered to defeat the purpose of title II." 20 C.F.R. § 404.512(a) and (b).

---

[5] Although § 404.506 underwent amendments effective February 11, 2008, subparagraph (a) was not changed.

Section 508 explains what it means to "Defeat the purpose to title II" and § 509 explains what is meant to be "against equity and good conscience."

Given this statutory and regulatory framework, the SSA grants a waiver of an overpayment only when the individual is without fault in causing the overpayment and when recovery would neither defeat the purpose of the Act nor be against equity and good conscience. *Bray v. Bowen*, 854 F.2d 685, 687 (5th Cir. 1988). The claimant has the burden to prove that he or she is without fault. *Id.*; *Rini v. Harris*, 615 F.2d 625, 627 (5th Cir. 1980).

The ALJ found Plaintiff at fault for the overpayment. R. 36. The ALJ noted two letters from Plaintiff to the SSA that indicate awareness that her working could affect her benefits and result in an overpayment that would need to be paid back. *Id.* Those letters indeed indicate such awareness. *See* R. 511. Plaintiff also testified that she called the SSA and told them she "would be making more than the requirement in fact in 2003." R. 1483. She intended to tell them to stop her benefits, but SSA explained that there are incentives to cover medical. *Id.* Thinking "this sounds kind of too good to be true," she asked for something in writing and the SSA sent her a brochure. *Id.* She believed all of her medication expenses qualified as work expenses as well as her walker, cane, and ankle-foot orthopedics. R. at 1484-86.

The ALJ considered whether any mitigating mental limitations could have led to the overpayment. R. 36. After the SSA found Plaintiff disabled, she attended college but struggled with math. R. 756. A licensed psychologist found Plaintiff "functioning in the average range of intelligence," with test "scores that were higher than or commensurate with her ability level in all academic areas," but her MS and anxiety "may have a negative impact on her ability to deal with mathematics." R. 759. Given her MS and resulting anxiety, the psychologist recommended various

9

accommodations with respect to the math requirement even though Plaintiff did not meet criteria for a mathematical learning disorder. R. 759-60. The ALJ found that "claimant's ongoing, consistent work activity, her pursuit of higher education, and her unremarkable psychological testing all suggest that mental limitations should not have prevented the claimant from understanding the responsibilities that accompanied benefits payments." R. 36.

Substantial evidence supports the finding that no mitigating mental limitation could have led to the overpayment. Plaintiff graduated college despite her MS. The overpayment did not result from any erroneous mathematical computation. Plaintiff was well aware of the earning limits as shown by her communications with the SSA. At the very least, Plaintiff accepted overpayment of benefits that she could be expected to know was incorrect given her education, intelligence, and any limitations.

The Court should find that substantial evidence supports the ALJ's decision to find that Plaintiff was not without fault for the overpayment of benefits. Because the ALJ found Plaintiff at fault in causing the overpayment, she found that the Commissioner cannot waive recovery of benefits. R. 37. That finding is consistent with the statutory and regulatory scheme. Consequently, the Court should uphold the decision to not waive the overpayment and find that Plaintiff is not entitled to any requested relief in this action.

Plaintiff relies heavily on information about incentives that would lower her earnings. In her testimony to the ALJ, she appears to indicate that the incentives changed her mind about cancelling benefits. Even assuming that a brochure provided potentially confusing information, Plaintiff has not shown that any such confusion entirely absolves her of all fault. Even if the provided information contributed to the overpayment, Plaintiff remained responsible for determining her earnings with

appropriate deductions for applicable medical expenses. As discussed in the prior section, substantial evidence supports the finding that her earnings exceeded substantial gainful activity in 2003. Substantial evidence also supports the decision to find her at least partially at fault for the overpayment even considering the issue of incentives.

## IV. CONCLUSION

For the reasons set forth in this Report and Recommendation, the Court should find that substantial evidence supports the Commissioner's decision and no legal error requires remand. The undersigned thus **RECOMMENDS** that the district court **AFFIRM** the Commissioner's decision.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

SO ORDERED this ___ day of August, 2017.

E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE

11